UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-20021-CR-GAYLES

UNITED STATES OF AMERICA

vs.

ERICK NTEKEREZE PRINCE,
    a/k/a "Eric Prince",

    **Defendant.**
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM
AS TO DEFENDANT ERICK NTEKEREZE PRINCE**

The United States of America, by and through its undersigned counsel, hereby submits this sentencing memorandum for defendant Erick Ntekereze Prince (the "defendant"). Over a roughly four-year period, the defendant conspired with multiple foreign national information technology ("IT") workers to obtain remote employment with companies in the United States through contracts made between the defendant's business, Taggcar Incorporated ("Taggcar"), and the victim companies. The defendant's role was essential to the scheme's success. He operated a "laptop farm;" that is, he received and hosted laptop computers shipped by victim U.S. companies to his residences and installed remote desktop software onto those laptops. The defendant also shipped laptops to a Chinese city bordering North Korea and provided false employment certifications to deceive the victim companies into believing his IT worker co-conspirators were located and eligible to be employed in the United States. The defendant's actions threatened national security by enabling his co-conspirators to enrich the North Korean government by approximately $943,069.05 and caused multiple victim companies to incur substantial losses.

The United States respectfully recommends a sentence of imprisonment at the low end of the guidelines range, as that range in determined by the Court. The United States further

1

recommends that the Court impose 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $89,000 (the amount the defendant was paid for his participation in the conspiracy). The requested sentence reflects the seriousness of the offense, affords adequate specific and general deterrence, protects the public, and avoids unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a).

## PROCEDURAL HISTORY

On January 21, 2025, a grand jury indicted the defendant and his four co-defendants with Conspiracy to Damage Protected Computers, in violation of Title 18, United States Code, Section 371 (Count One); Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349 (Count Two); Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Three); and Conspiracy to Transfer False Identification Documents, in violation of Title 18, United States Code, Section 1028(a)(2) and (f) (Count Four). In addition, the North Korean co-defendants were also charged with Conspiracy to Violate the International Emergency Economic Powers Act, in violation of Title 50, United States Code, Section 1705(a) and (c) (Count Five).

On November 6, 2025, the defendant entered a voluntary plea of guilty to Count Two of the indictment pursuant to a plea agreement with the United States. [DE # 56 and 57.] On January 6, 2026, the defendant filed a notice of intention to withdraw his guilty plea, but on or about February 27, 2026, he informed the Court that he would not seek to withdraw his guilty plea and requested that a sentencing date be set. [DE # 73 and 80.] Sentencing is scheduled to take place on March 26, 2026. [DE # 80.]

## RELEVANT FACTS

The stipulated factual proffer describes in detail the facts that establish defendant's guilt

beyond a reasonable doubt. [DE # 56.] This memorandum summarizes those facts and highlights additional ones relevant to the Court's sentencing.

The government of the Democratic People's Republic of Korea ("DPRK" or "North Korea") has sponsored a variety of schemes to evade comprehensive U.S. and United Nations sanctions and earn money for the regime, including remote IT worker schemes like the one in which the defendant participated. From on or about June 17, 2020, and continuing through in or around August 2024, the defendant, a U.S. citizen and resident of New York, acted as a facilitator for at least three North Korean IT workers. During the course of the scheme, the defendant's North Korean co-conspirators obtained remote IT work positions using false and stolen identities from at least 64 different U.S. companies. The co-conspirators received payments totaling approximately $943,069.05 for that work, including work performed by the companies identified in the indictment as Company A, Company B, Company C, and Company D. For his participation in the scheme, the defendant received more than $89,000, which was electronically transferred into a bank account he opened in the name of Taggcar.

Although the defendant believed that his co-conspirators were Chinese nationals, there is strong evidence they were North Korean nationals living in Dalian, China.[1] Skype communications between the defendant, using the Skype account erick.nt, and co-defendant Jin Sung-il ("Jin"), using the Skype account live:richard.stewart.1202, confirm that Jin was located in Dalian, China.

---

[1] Dalian is a major port city located on the southern tip of the Liaodong peninsula of China with a long history of facilitating North Korean sanctions violations. *See e.g.*, U.S. Dep't of the Treasury, *Treasury Acts to Increase Economic Pressure on North Korea and Protect the U.S. Financial System*, June 29, 2017, https://home.treasury.gov/news/press-releases/sm0118 (last visited December 12, 2025); *see also* United Nations Security Council, *Report of the Panel of Experts established pursuant to Resolution 1874 (2009)*, U.N. Doc. S/2013/337, at 40-41 (June 11, 2013), https://docs.un.org/en/S/2013/337 (last visited December 12, 2025).

On or about April 29, 2022, Jin instructed the defendant to ship a laptop belonging to Company B to Dalian, China, as shown verbatim below.

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:richard.stewart.1202 | erick.nt | I think we have to send [redacted] Laptop using ups. | 2022/04/29 14:14:19 |
| erick.nt | live:richard.stewart.1202 | 🙂 | 2022/04/29 14:14:32 |
| erick.nt | live:richard.stewart.1202 | Ok today? | 2022/04/29 14:15:02 |
| live:richard.stewart.1202 | erick.nt | yes | 2022/04/29 14:15:08 |
| erick.nt | live:richard.stewart.1202 | Send info, will drop it off in a couple of hours. It's going to be expensive | 2022/04/29 14:15:45 |
| live:richard.stewart.1202 | erick.nt | Address: 大连市 中山区 中山九号 瑞家地产<br>Zhongshan No.9 Ruijia Land Property, Zhongshan District, Dalian<br><br>Name: Gu Yingxiao (顾瀛枭)<br>Phone: +86 13804258525<br>Postal Code: 116001 | 2022/04/29 14:17:06 |

Similarly, on or about May 9, 2025, Jin told the defendant that he needed to receive a second laptop in Dalian, China and asked the defendant to contact the shipper to change the destination address from Dandong, China to Dalian, China, as shown verbatim below.[2]

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:richard.stewart.1202 | erick.nt | And the computer passed customs. | 2022/05/09 15:40:10 |
| erick.nt | live:richard.stewart.1202 | Good!! | 2022/05/09 15:40:27 |
| live:richard.stewart.1202 | erick.nt | The destination address is DanDong. But I have to receive at Dalian. The package is at Dalian now. | 2022/05/09 15:40:51 |
| live:richard.stewart.1202 | erick.nt | But I can't pickup. Because I don't have permission to change destination address. | 2022/05/09 15:41:04 |
| live:richard.stewart.1202 | erick.nt | Only sender can change address. | 2022/05/09 15:41:10 |
| live:richard.stewart.1202 | erick.nt | Can you call DHL to change destination address? | 2022/05/09 15:41:19 |
| erick.nt | live:richard.stewart.1202 | So should I contact them? | 2022/05/09 15:41:24 |
| live:richard.stewart.1202 | erick.nt | Yes. Ask them to send dalian address. | 2022/05/09 15:41:36 |
| live:richard.stewart.1202 | erick.nt | 1601, Unit 1, Building 9, Haichangxincheng Lianjingyuan, Huale Street, Zhongshan District, Dalian, Liaoning<br><br>辽宁省 大连市 中山区 华乐街 海昌欣城 涟景园 9号楼1单元160 | 2022/05/09 15:41:42 |
| live:richard.stewart.1202 | erick.nt | I have to receive it asap. The sprint date is Thursday. | 2022/05/09 15:41:52 |

Skype communications between the defendant's co-conspirators also revealed thousands of chats in Korean. Beginning on or about December 28, 2023, co-defendants Pak Jin Song ("Pak"), using the Skype account live:truestar111, and Jin, using the Skype account

---

[2] Dandong is a city located in the Liaoning province of China that borders the northwestern corner of North Korea and has an important border crossing, the Sino-Korean Friendship Bridge, which connects Dandong, Chian to Sinuiju, North Korea.

live:richard.stewart.1202, had the following conversation regarding the scheme, which was originally in Korean and reproduced here in English:

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:truestar111 | live:richard.stewart.1202 | I'm trying to install an app, but what's the Apple account | 12/28/2023 12:37 |
| live:truestar111 | live:richard.stewart.1202 | It's the pedro alonso account… | 12/28/2023 12:37 |
| live:richard.stewart.1202 | live:truestar111 | I forgot the password, so I'll just install it using facial recognition. | 12/28/2023 12:37 |
| live:truestar111 | live:richard.stewart.1202 | Okay, I'm going now. | 12/28/2023 12:38 |
| live:richard.stewart.1202 | live:truestar111 | Yes. | 12/28/2023 12:38 |
| live:richard.stewart.1202 | live:truestar111 | Comrade Jinsung | 1/2/2024 20:29 |
| live:richard.stewart.1202 | live:truestar111 | Do you have any money in Wise? | 1/2/2024 20:29 |
| live:truestar111 | live:richard.stewart.1202 | How much do I need? | 1/2/2024 20:34 |
| live:richard.stewart.1202 | live:truestar111 | The guy from Daebang said he needs the rent money and asked me to return some before the money comes in. | 1/2/2024 20:34 |
| live:richard.stewart.1202 | live:truestar111 | That's why. Haha. | 1/2/2024 20:34 |
| live:truestar111 | live:richard.stewart.1202 | It should arrive tomorrow morning. | 1/2/2024 20:34 |
| live:truestar111 | live:richard.stewart.1202 | It might arrive tonight, but since it hasn't arrived yet, it'll probably be tomorrow morning… | 1/2/2024 20:35 |
| live:richard.stewart.1202 | live:truestar111 | I'll receive a deposit around the 14th. | 1/2/2024 20:35 |
| live:richard.stewart.1202 | live:truestar111 | I just need to be able to use it until then. | 1/2/2024 20:35 |
| live:truestar111 | live:richard.stewart.1202 | Yes. | 1/2/2024 20:35 |
| live:richard.stewart.1202 | live:truestar111 | Would about 2,000 be okay? | 1/2/2024 20:35 |
| live:truestar111 | live:richard.stewart.1202 | Yes. Can't I just tell Comrade Ham and get it? | 1/2/2024 20:36 |
| live:richard.stewart.1202 | live:truestar111 | Well, I did report to Comrade Ham during the day. | 1/2/2024 20:36 |
| live:richard.stewart.1202 | live:truestar111 | Let's do that. | 1/2/2024 20:36 |
| live:truestar111 | live:richard.stewart.1202 | Well, since it's something we can do after talking about it, | 1/2/2024 20:37 |
| live:richard.stewart.1202 | live:truestar111 | Yes. | 1/2/2024 20:37 |

In relevant part, Pak and Jin discuss the installation of an application related to the "Pedro Alonso" Apple account.[3] In the same conversation, Jin, referring to Pak as "Comrade Jinsung," asks Pak if he has a Wise account. Wise is a U.S.-based online money transfer and digital payment service. North Korean IT workers favor platforms like Wise because they specialize in facilitating cross-border business-to-business payments in multiple local currencies.

In the same chats, Jin and Pak would often send pictures of themselves. For example, here is a picture of Pak (center, pink tie) standing next to Jin (second from the right, blue tie) and several other presumed IT workers at a North Korean flower exhibition in Dalian, China:

---

[3] Here, "Pedro Alonso" refers to defendant's co-conspirator Pedro Ernesto Alonso de los Reyes. [*See* DE 3 at ¶ 12.]

5



The group is posed in front of a mural depicting a large red Kimjongilia flower with alternating North Korean and Chinese flags lining the top. The Kimjongilia flower is named after the late North Korean leader Kim Jong Il.

A search of Pak's Skype account also located the photo below of Pak wearing a North Korean double badge lapel pin:



The double badge lapel pin depicts Kim Il Sung and Kim Jong Il, North Korea's first and second presidents, who, according to North Korean culture, are the "Eternal Leaders" of North Korea. A close-up photograph of the double badge lapel pin from open sources is provided below for reference.



## ADVISORY SENTENCING GUIDELINES

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The advisory sentencing guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark." *Id.* at 46-49. On December 31, 2025, the United States Probation Office ("Probation Office") issued a Presentence Investigation Report (the "PSR") in which it determined the defendant's advisory guidelines range, including applicable adjustments. The United States agrees with the Probation Office's factual findings and calculation of the defendant's advisory sentencing guidelines range of 41 to 51 months of imprisonment. [DE 71, at ¶ 138.]

The offense of conviction is conspiracy to commit wire fraud and mail fraud in violation of Title 18, United States Code, Section 1349, which carries a maximum period of incarceration of 20 years. [DE 71, at ¶ 86.] The applicable guidelines for the offense of conviction are U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2). [*Id.*, at ¶¶ 86-87.] The base offense level is 7 pursuant to U.S.S.G. § 2X1.1(a), 2B1.1(a)(1) because the defendant was convicted of wire fraud conspiracy in violation of 18 U.S.C. § 1349, and the offense of conviction has a statutory maximum term of imprisonment of 20 years. [*Id.* at ¶ 87.]

There is a 14-level upward adjustment under U.S.S.G. § 2B1.1(b)(1)(H) because the offense resulted in an estimated loss amount of more than $550,000 but less than $1,500,000. [*Id.* at ¶ 88.] There is a 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims. [*Id.* at ¶ 89.] There is a 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(10)(B) because a substantial part of the fraudulent scheme was committed from outside the United States. [*Id.* at ¶ 90.] There is a 2-level upward adjustment under U.S.S.G.

§ 2B1.1(b)(10)(B) 2B1.1(b)(11)(C)(i), because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification. [*Id.* at ¶ 91.]

There is a 3-level reduction under U.S.S.G. § 3E1.1(a) based on defendant's acceptance of responsibility. [*Id.* at ¶ 96-97.] There is also a 2-level reduction under U.S.S.G. § 4C1.1(a), because the defendant meets all of the following criteria to qualify as a zero-point offender. [*Id.* at ¶ 98.]

The resulting offense level is 22, and the defendant is in criminal history category I. [*Id.* at ¶ 99.] The advisory guidelines range for an offense level 22 and criminal history category I is 41 to 51 months imprisonment.

Pursuant to the Plea Agreement, the parties agreed that the recommended sentencing guidelines range is 41 to 51 months of imprisonment, prior to taking into account any downward variances. The United States has agreed to recommend a sentence at the low end of the guidelines range, as that range in determined by the Court, and to not object to a two-level downward variance, based upon the factors set forth in Title 18, United States Code, Section § 3553(a). [*See* DE 56 at ¶ 6(A)(iv) and (C)(i).] Should the Court apply a two-level downward variance, the defendant would have a total offense level of 20 and an advisory guideline imprisonment range of 33 to 41 months.

## **ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553**

The district court should next consider all applicable factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. Based on these factors, the United States recommends a sentence of imprisonment at the low end of the guidelines range, followed by 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of

$89,000.00. This recommended sentence appropriately reflects and addresses the seriousness of the defendant's conduct, serves as a deterrent to other U.S.-based facilitators, and aligns with the statute's mandate that the "[C]ourt . . . impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

### A. The Nature and Circumstances of the Offense Are Serious

The defendant and his co-conspirators defrauded at least 64 U.S. companies out of close to $1 million, and the defendant's conduct was integral to the scheme's success. In or around May 2021, the defendant entered into corporation-to-corporation ("C2C") agreements on behalf of Taggcar with U.S. victim companies to hire his North Korean co-conspirators. A C2C contract is an agreement between two (or more) businesses for services, rather than an agreement between a business and an employee (or contractor) for services. The benefit of this model is that it shields the remote IT worker from direct scrutiny by the company seeking the remote IT work. Instead, the victim companies here were tricked into believing they had hired a vetted contractor through a legitimate company, as demonstrated by defendant's own communications, which are shown verbatim below.

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:richard.stewart.1202 | erick.nt | I hope to make contract in C2C. | 2021/05/28 18:09:30 |
| live:richard.stewart.1202 | erick.nt | And you have a company. | 2021/05/28 18:09:40 |
| live:richard.stewart.1202 | erick.nt | Can't your company make contract with client company? | 2021/05/28 18:09:51 |
| live:richard.stewart.1202 | erick.nt | For me. | 2021/05/28 18:09:53 |
| erick.nt | live:richard.stewart.1202 | What's C2C? | 2021/05/28 18:10:11 |
| live:richard.stewart.1202 | erick.nt | Corp to Corp Contract. | 2021/05/28 18:10:31 |
| live:richard.stewart.1202 | erick.nt | Your company will make contract with client company instead of me. | 2021/05/28 18:10:46 |
| erick.nt | live:richard.stewart.1202 | And you will do the work? For that company through that contract | 2021/05/28 18:11:20 |
| live:richard.stewart.1202 | erick.nt | yes. | 2021/05/28 18:11:27 |
| live:richard.stewart.1202 | erick.nt | There is no thing to do in your side. | 2021/05/28 18:11:33 |
| live:richard.stewart.1202 | erick.nt | And you can get commission. | 2021/05/28 18:12:07 |

As part of this ruse, the defendant intentionally did not perform background checks and knowingly facilitated the employment of a foreign national, despite knowing it to be illegal, as shown verbatim below:

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:richard.stewart.1202 | erick.nt | I want to get hired as Contractor. Then how should we say to recruitor? | 2021/06/24 18:03:10 |
| erick.nt | live:richard.stewart.1202 | That's what's happening right now. You're a contractor for taggcar and the recruiter is hiring you through taggcar. That's what the W9 was for | 2021/06/24 18:04:02 |
| erick.nt | live:richard.stewart.1202 | If you want to get hired as a contractor you will need your own social security number or tax id number | 2021/06/24 18:04:49 |
| live:richard.stewart.1202 | erick.nt | Is it possible for foreginer? | 2021/06/24 18:06:10 |
| erick.nt | live:richard.stewart.1202 | Nope | 2021/06/24 18:06:17 |
| erick.nt | live:richard.stewart.1202 | The rules are very strict, especially since you're in China | 2021/06/24 18:06:47 |
| live:richard.stewart.1202 | erick.nt | Lets' think about Mexico citizen. | 2021/06/24 18:06:59 |
| erick.nt | live:richard.stewart.1202 | Not possible | 2021/06/24 18:07:08 |
| erick.nt | live:richard.stewart.1202 | You need a social security number or a visa to work in the United States | 2021/06/24 18:07:29 |
| erick.nt | live:richard.stewart.1202 | Do you have a visa? | 2021/06/24 18:07:43 |
| live:richard.stewart.1202 | erick.nt | He has TN Visa but hasn't SSN. | 2021/06/24 18:07:47 |
| live:richard.stewart.1202 | erick.nt | Is it possible?<e_m a="live:richard.stewart.1202" | 2021/06/24 18:07:55 |
| live:richard.stewart.1202 | erick.nt | Is it possible?<e_m a="live:richard.stewart.1202" | 2021/06/24 18:07:50 |
| erick.nt | live:richard.stewart.1202 | I don't know. You would need to speak to an immigration lawyer | 2021/06/24 18:08:48 |
| erick.nt | live:richard.stewart.1202 | But companies avoid this because it's so complicated | 2021/06/24 18:09:06 |
| live:richard.stewart.1202 | erick.nt | I see. | 2021/06/24 18:09:16 |
| live:richard.stewart.1202 | erick.nt | I have TN Visa and SSN number. Then Is it not complicated? | 2021/06/24 18:09:34 |
| erick.nt | live:richard.stewart.1202 | Then I think it might be possible to get hired directly | 2021/06/24 18:10:06 |
| erick.nt | live:richard.stewart.1202 | But I'm not 100% sure | 2021/06/24 18:10:16 |
| live:richard.stewart.1202 | erick.nt | Does company do background check on C2C also? | 2021/06/24 18:10:38 |
| erick.nt | live:richard.stewart.1202 | I think so, I'm supposed to do a background on you but I didn't | 2021/06/24 18:11:09 |
| erick.nt | live:richard.stewart.1202 | It's standard procedure | 2021/06/24 18:11:21 |
| live:richard.stewart.1202 | erick.nt | Your company has to do. But client company hire me through your company. | 2021/06/24 18:11:42 |
| live:richard.stewart.1202 | erick.nt | In this case, does client company background check? | 2021/06/24 18:12:12 |
| erick.nt | live:richard.stewart.1202 | It's their right. | 2021/06/24 18:12:23 |
| erick.nt | live:richard.stewart.1202 | I can't ask them not to do background | 2021/06/24 18:12:50 |
| live:richard.stewart.1202 | erick.nt | I got i. | 2021/06/24 18:13:09 |
| erick.nt | live:richard.stewart.1202 | Remember they are a contractor to. | 2021/06/24 18:13:19 |
| live:richard.stewart.1202 | erick.nt | So what is relationship between Taggcar and me? | 2021/06/24 18:13:42 |
| live:richard.stewart.1202 | erick.nt | Contractor Hire? | 2021/06/24 18:13:51 |
| erick.nt | live:richard.stewart.1202 | Contractor | 2021/06/24 18:13:51 |
| erick.nt | live:richard.stewart.1202 | Freelancer | 2021/06/24 18:14:43 |
| erick.nt | live:richard.stewart.1202 | "It is illegal, generally, for a foreign entity to hire a Chinese national without a legal presence in the country. Establishing a business in China can be a complex, lengthy process, and it differs depending on where you want to establish that busines" | 2021/06/24 18:24:52 |

Additionally, the defendant knowingly provided false employment certifications to the U.S. victim companies. Here, after learning that his co-defendant, an apparent Chinese national he believed to be named "Richard Stewart" had applied for a job as a Canadian citizen named "Pedro Alonso" and TN visa,[4] the defendant stalls for time, while the recruiter for a victim company reviewed a fake visa, as shown verbatim below.

---

[4] A TN visa allows eligible citizens of Canada and Mexico to work in the United States in prearranged professional level business activities for U.S. or foreign employers.

11

| Sender | Receiver | Message | Timestamp |
|---|---|---|---|
| live:richard.stewart.1202 | erick.nt | I applied as Pedro Alonso. And said that I'm Canada citizen and have TN visa. | 2021/06/24 18:46:13 |
| erick.nt | live:richard.stewart.1202 | I don't have a official govt documents for you. Even as Pedro. | 2021/06/24 18:47:02 |
| erick.nt | live:richard.stewart.1202 | It's very difficult to get, only big companies can afford to do it. So now I will tell them that I don't have it | 2021/06/24 18:47:58 |
| live:richard.stewart.1202 | erick.nt | ok | 2021/06/24 18:48:26 |
| erick.nt | live:richard.stewart.1202 | And the whole C2C thing will break down because in that case I can't legally hire you neither can they | 2021/06/24 18:48:39 |
| live:richard.stewart.1202 | erick.nt | so you mean we can't get hired in this job. right? | 2021/06/24 18:49:18 |
| erick.nt | live:richard.stewart.1202 | Most likely no. Nor any other job. You can try to see if they hire | 2021/06/24 18:51:20 |
| live:richard.stewart.1202 | erick.nt | In my thought, they can't hire me directly. | 2021/06/24 18:52:01 |
| live:richard.stewart.1202 | erick.nt | Did you send reply? | 2021/06/24 18:52:12 |
| erick.nt | live:richard.stewart.1202 | No they can't. No I ignore it but they just sent me signed | 2021/06/24 18:52:32 |
| live:richard.stewart.1202 | erick.nt | They asked proof. And didn't you send reply? | 2021/06/24 18:53:17 |
| erick.nt | live:richard.stewart.1202 | No I didn't | 2021/06/24 18:54:29 |
| live:richard.stewart.1202 | erick.nt | How about send reply like this? | 2021/06/24 18:57:49 |
| erick.nt | live:richard.stewart.1202 | I can say I'll have to check the original contracts under which we hire. | 2021/06/24 19:00:32 |
| live:richard.stewart.1202 | erick.nt | ok. please do. | 2021/06/24 19:02:06 |

The foregoing makes clear that the defendant knew that his overseas co-conspirators were not authorized to work in the U.S., that they were using false identification documents, and that they would not be hired if the employers knew the truth, and yet he facilitated their unlawful employment anyway.

 The defendant further aided in the deception by hosting the victim companies' laptop computers in his home and enabling his co-conspirators to remotely access the laptop computers by downloading, without authorization, remote desktop software, like AnyDesk, onto the computers. According to his Skype communications, the defendant claimed he had at least 11 laptops in his New York apartment as of April 27, 2022. When he was unable to install AnyDesk, due to the Company B's security control, the defendant shipped the computer to Dalian, China, a city with a long history of facilitating North Korean sanctions violations.

 The defendant's conduct threatened the nation's security. His co-conspirators were North Korean nationals, who raised revenue for the North Korean government. While the defendant was unaware of North Korea's involvement, at a minimum, he believed that he was illegally facilitating

12

employment for *Chinese* nationals not authorized to work in the United States.[5] On June 24, 2021, the defendant said as much in the chat set forth on page 11 above: "'It is illegal, generally, for a foreign entity to hire a Chinese national without a legal presence in the country…'." The defendant also knew that he was transmitting money from his Taggcar business account to unknown individuals located in China, who may have interests adverse to the United States. For example, between in or around August 2021 to in or around March 2024, the defendant made at least 97 payments from the Taggcar Payoneer account for wages earned by JIN, PAK, and others to seven individuals or entities, including to four Payoneer accounts opened by Chinese nationals. In sum, the defendant's ignorance of his co-conspirators' North Korean nationality does not mitigate the deliberate steps he took to facilitate their employment at U.S. companies and the transmission of funds to online money service accounts controlled by North Korean nationals.

### B. History and Characteristics of the Defendant

The defendant has no criminal history, and he has accepted responsibility for his crime. These factors weigh in favor of a lower sentence. However, this conviction did not stem from a single, impulsive act. The defendant played an integral role in the scheme over a roughly four-year period. He took daily actions to keep the complex scheme in operation and took steps to hide the fraud from his employers. Without his assistance, the defendant's co-conspirators would have been unable to obtain these jobs in the first place. The serious nature of the defendant's offense calls for a proportionately serious sentence of imprisonment, even when weighed against his personal history and characteristics.

---

[5] Facilitating remote access by Chinese nationals in China to U.S. company networks—unbeknownst to and without authorization from those companies—itself presents a substantial cybersecurity risk.

C. **There is a Strong Need for General Deterrence**

A serious sentence is necessary to promote respect for the law and deter others from participating in similar schemes. North Korean IT worker schemes would not be successful without U.S.-based facilitators, like the defendant, who willingly assist overseas remote IT workers by operating laptop farms, defrauding U.S. companies through the use of false and fake identification documents, and pocketing substantial sums of money for their roles. A serious sentence in this case will deter others from enabling North Korean revenue generation that is a threat to the national security of the United States. Conversely, a sentence that is too lenient would convey the wrong message to both North Korean IT workers and current and future U.S.-based facilitators that this conduct is tolerated in the United States and worth the risk of being caught by U.S. law enforcement.

D. **This Sentence Avoids Unwarranted Sentence Disparities Among Defendants**

To the government knowledge, this is the sixth case involving a U.S.-based enabler of North Korean remote IT workers that will have proceeded to sentencing after pleading guilty pursuant to a plea agreement. The other five matters are:

- *United States v. Christina Chapman*, D.D.C. Crim. No. 24-220-RDM,
- *United States v. Minh Phuong Ngoc Vong*, D.M.D. Crim. No. 24- 177-DLB,
- *United States v. Alexander Paul Travis,* S.D.Ga. Crim. No. 25-00059-JRH-BKE,
- *United States v. Jason Salazar*, S.D.Ga. Crim. No. 25-00060-JRH-BKE, and
- *United States v. Audricus Phagnasay*, S.D.Ga. Crim. No. 25-00061-JRH-BKE.[6]

---

[6] In February 2026, a court in the District of Columbia sentenced a foreign national for facilitating North Korean revenue generation through an online business that allowed the IT workers to buy or rent stolen or borrowed identities belonging to real individuals in order to obtain remote IT work. *See United States v. Oleksandr Didenko*, D.D.C. Crim. No. 24-261-RDM. There, the

In *Chapman*, a U.S.-based facilitator was sentenced to 102 months in prison. *See Chapman* Sentencing Transcript, attached hereto as Attachment A. As compared to the defendant, Chapman facilitated fraud against a significantly larger number of employers (300) and generated a substantially larger sum of money that was funneled to the North Korean regime ($6.8 million at the time of indictment). Nonetheless, much of the *Chapman* Court's reasoning is applicable here. As the Court there explained:

> Ms. Chapman knew what she was doing was wrong. She knew that she was assisting some enemy of the United States. It is not clear which enemy she thought, but she knew it was an enemy of the United States. She may have unwittingly gotten involved at first, but she—as she continued through this process she knew what she was doing was unlawful. And … the consequences of what she did are extremely serious. They were real live victims whose lives were affected by her conduct, companies who were affected by her conduct. And most significantly from my perspective, the North Korean government was benefitted by her conduct in a manner that was material. And whether she knew it was North Korea or not or thought it was China or Pakistan, she thought she was helping some enemy of the United States. And I do think that the national security consequences of this case and cases like it are extremely, extremely serious.

Att. A, at 32–33. Although the Court found that Ms. Chapman was "genuinely remorseful" and "the likelihood of recidivism [was] extremely low," the Court nevertheless imposed a substantial sentence, saying: "courts are going to take this really, really seriously because the consequences to the safety of our nation are at issue here." *Id.* at 34.

In *Vong*, the U.S.-based facilitator pleaded guilty to a single-count indictment charging him with wire fraud conspiracy, in violation of 18 U.S.C. § 1349. Vong facilitated fraud against 14 companies and generated $977,538.33, which was ultimately funneled to the North Korean regime. Vong's guidelines range was 33 to 41 months' imprisonment, based on an offense level 20 and criminal history category I. The government sought a sentence of 30 months, and the defense

---

defendant pled guilty to conspiracy to commit wire fraud and aggravated identity theft in violation of 18 U.S.C. §§ 1349 and 1028A, respectively, and was sentenced to 60 months in prison.

15

sought home confinement. Ultimately, Vong was sentenced to 15 months in prison, owing to, among other things, Vong's very unique mitigating circumstances. Specifically, Vong was the sole caregiver to two children, one of whom required extensive, specialized care. In rendering its judgment, the *Vong* Court made clear the offense was serious and that goals of sentencing required incarceration, despite these unique mitigating circumstances:

> This is an extremely serious offense. I have to consider the goals of sentencing. I start with the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. These goals absolutely require a period of incarceration. Nothing short of incarceration will achieve them. I have to consider the need to afford adequate deterrence to criminal conduct, both specific and general deterrence. As for specific deterrence, I find that Mr. Vong has been sufficiently deterred by this arrest and prosecution, he has no criminal history, and I do not believe a period of incarceration is necessary to achieve the goal of specific deterrence in this case. General deterrence is another matter. I must consider it, and in this case, I think it's a very important goal, and it requires a period of incarceration.

*Vong* Sentencing Transcript, at 51–52.[7] In rendering a below-guidelines sentence, the Court recognized the government's request for 30 months was "certainly not unreasonable in this case." *Id.* at 53.

In the Southern District of Georgia matters, three U.S.-based facilitators, Phagnasay, Salazar, and Travis, each pleaded guilty to a one count information charging conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Sentencing in these three cases is scheduled for March 18 and 19, 2026, which is after the date this memorandum will be submitted. The United States will update this Court on the sentences imposed in these cases at the defendant's sentencing hearing. In sum, the seriousness of the defendant's conduct and the threat to the national security posed by schemes such as this one counsel in favor of a period of incarceration. An appropriate sentence in this case, in light of all of the Section 3553(a) factors, a sentence at the low

---

[7] The *Vong* sentencing transcript was partially sealed by order of the Court, but can be made available for *in camera* review upon request.

end of the guidelines range, followed by 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $89,000.00. This sentence appropriately balances the severity of defendant's actions—which were essential to the scheme's success—against his apparent lack of knowledge of his co-conspirators' true nationality and the amount of money he ultimately received.

**CONCLUSION**

Based on the foregoing, the United States respectfully recommends the Court sentence the defendant to a term of imprisonment at the low end of the guidelines range, 36 months of supervised release, a special assessment of $100, and a money judgment in the amount of $89,000.

Respectfully submitted,

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: March 12, 2026     By:     */s/ Gregory J. Nicosia, Jr.*
GREGORY JON NICOSIA, JR.
Court No. A5503319
Trial Attorney
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 353-4273
Gregory.Nicosia@usdoj.gov

SEAN PAUL CRONIN
Court No. A5500940
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 400
Miami, FL 33132
Tel: (305) 961-9194
Fax: (305) 530-6168
sean.p.cronin@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed through the ECF system on March 12, 2026, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Gregory J. Nicosia, Jr.*
Gregory Jon Nicosia, Jr.
Trial Attorney
Court No. A5503319