**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20021-GAYLES**

**UNITED STATES OF AMERICA**

**v.**

**ERICK NTEKEREZE PRINCE,**

    **Defendant.**

**UNITED STATES OF AMERICA'S MOTION FOR
<u>PRELIMINARY ORDER OF FORFEITURE</u>**

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States moves for the entry of a Preliminary Order of Forfeiture against Defendant **ERICK NTEKEREZE PRINCE,** (the "Defendant") in the above-captioned matter. The United States seeks a forfeiture money judgment in the amount of $89,000 in U.S. currency. In support of this motion, the United States provides the following factual and legal bases.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or around January 21, 2025, a federal grand jury charged the Defendant in a five-count Indictment. *See* Indictment, Dkt. No. 3. As relevant here, Count 2 of the Indictment charged the Defendant with conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349. *See id*. at 19-20.

The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of Title 18, United States Code, Section 1349, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense pursuant to Title 18, United States Code, Section 981(a)(1)(C). *See id.* at 25.

On November 6, 2025, the Court accepted the Defendant's guilty plea to Count 2 of the Indictment. *See* Minute Entry, Dkt. No. 55; Plea Agreement ¶ 1, Dkt. No. 57. As part of the guilty plea, the Defendant agreed to the forfeiture of a forfeiture money judgment in the amount of $89,000 in U.S. currency. *See* Plea Agreement ¶ 11, Dkt. No. 57.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, Dkt. No. 56.

## II.   MEMORANDUM OF LAW

### A.   Directly Forfeitable Property

Any property constituting, or derived from, proceeds obtained directly or indirectly as the result of conspiracy to commit wire and/or mail fraud is subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(C).

If a defendant is convicted of such violation, the Court "shall order" the forfeiture of property as part of the sentence. *See* 18 U.S.C § 981(a)(1)(C); 28 U.S.C. § 2461(c). Criminal forfeiture is governed by the preponderance standard. *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria.  The court must enter the order without regard to any third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A).  To the extent there is a third-party interest to any forfeited asset, such claims are addressed after the property is preliminary forfeited, in third-party ancillary

proceedings. *See* 21 U.S.C. § 853(k), (n); Fed. R. Crim. P. 32.2.

The Court "must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant," unless entering the order at that time would be "impractical." Fed. R. Crim. P. 32.2(b)(2)(B); *but see McIntosh v. United States*, 601 U.S. 330, 333, 338 (2024) ("district judge's failure to enter a preliminary order prior to sentencing does not deprive a judge of the power to order forfeiture"). And at sentencing, the Court "must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing," and then "include the forfeiture order, directly or by reference, in the judgment." Fed. R. Crim. P. 32.2(b)(4)(B).

If, however, "before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment," the Court may enter a general order of forfeiture that: "(i) lists any identified property; (ii) describes other property in general terms; and (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated." Fed. R. Crim. P. 32.2(b)(2)(C). Under Rule 32.2(e)(1), "the court may at any time enter an order of forfeiture or amend an existing order of forfeiture" when additional, specific property is identified, or to forfeit any substitute property under 21 U.S.C. § 853(p).

### B.      Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t

sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Court in imposing a forfeiture money judgment may rely on an agent's reliable hearsay. *See United States v. Stathakis*, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008). The defendant's money judgment amount can be based on a reasonable estimate on the amount of property subject to forfeiture. *See, e.g., United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011); *United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019); *United States v. Vico*, 2016 WL 233407, at *7 (S.D. Fla. Jan. 20, 2016) (calculation of money judgment does not require mathematical exactitude; district court may make a reasonable extrapolation

4

supported by a preponderance of the evidence).

### C.      Difference Between Forfeiture and Restitution

Both forfeiture and restitution are mandatory in criminal cases. *See United States v. Brummer*, 598 F.3d 1248, 1250-51 (11th Cir. 2010) (the word "shall" does not convey discretion and the district court was required to order forfeiture of the property in accordance with Fed. R. Crim. P. 32.2); 18 U.S.C. § 3664(f)(1)(A) (requiring district courts to order restitution in the full amount of each victim's losses). Although sometimes conflated, forfeiture and restitution serve different purposes. "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice." *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014) (citing *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007), *United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009), and *Libretti v. United States*, 516 U.S. 29, 39 (1995)). Because of this distinction, the Eleventh Circuit has repeatedly held that district courts cannot use restitution to offset the forfeiture amount ordered, or vice versa. *See United States v. Hernandez*, 803 F.3d 1341, 1342-44 (11th Cir. 2015); *Joseph*, 743 F.3d at 1354 ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits."); *United States v. Bane*, 720 F.3d 818, 827 n.8 (11th Cir. 2013); *United States v. Hoffman-Vaile*, 568 F.3d at 1344-45; *Browne*, 505 F.3d at 1281 (finding defendant's disgorgement of illicit profits did not divest the United States of its forfeiture interest in the full amount of offense).

D.      **Property Subject to Forfeiture in Instant Criminal Case**

Since on or around 2003, the government of the Democratic People's Republic of Korea ("North Korea") has been under sanction by the United Nations ("UN") due to, among other things, its nuclear weapons program. Factual Proffer, Dkt. No. 56, at 1. Since in or around 2016, the United States has had comprehensive trade and economic sanctions against North Korea, effectively cutting North Korea off from the U.S. marketplace and financial system and restricting the ability of U.S. persons and companies from doing business with North Korean institutions. *Id*. at 1. As a result, North Korea has sponsored a variety of schemes to evade these sanctions and earn money for their regime. *Id*.

As part of one such scheme and as relevant here, North Korea has dispatched thousands of highly skilled information technology ("IT") workers to obtain remote, pseudonymous employment with companies around the world. *Id*.  While some of these IT workers operate from cities inside North Korea, many work in the People's Republic of China ("China") in cities near the North Korean border. *Id*. at 1-2.

North Korean IT workers are aided in this fraud by persons residing in the United States. *Id*. at 2. These U.S. facilitators receive, and host laptop computers and other hardware issued by U.S. victim companies at the facilitators' residences in the United States. *Id*. Using login credentials provided to them by the overseas IT workers – and unbeknownst to and without the authorization of the U.S. victim companies – the U.S. facilitators then enable remote access to the laptop computers by the overseas IT workers by downloading remote desktop software *(e.g.,* AnyDesk) to the computers. *Id*. The North Korean IT workers use the remote desktop software to access U.S.-based computers so that it appears to U.S. victim companies that the overseas IT workers are performing their work from U.S.-based locations. *Id*.  Remote desktop software

applications allow a computer to remotely run another computer's desktop environment. *Id*. The remote connection between devices is established and maintained through the Internet. *Id*. In exchange for these and other services, many U.S. facilitators are paid a fee. *Id*. Most of the money generated by this scheme, however, is funneled to the overseas IT workers and their overseas co-conspirators. *Id*.

From on or about June 17, 2020, through in or around August 2024, the Defendant, a U.S. citizen and resident of New York, conspired as a facilitator for at least three North Korean IT workers using the personas "Richard Stewart," "Pedro Alonso," "Stewart Conn," "Wesley Yang," and "Glaus Li," among others, and conspired with them to obtain their employment with U.S. companies, perform work remotely, and share in the proceeds generated by the remote IT work. *Id*.

At all relevant times, the Defendant believed the IT workers, and Richard Stewart in particular, were Chinese nationals residing outside, and not authorized to work in, the United States. *Id*.

In furtherance of the scheme, the North Korean IT workers used the stolen identities of U.S. citizens to apply for and obtain remote IT work at U.S. companies. *Id*. at 3. After the North Korean IT workers obtained remote IT work, the Defendant received and hosted the laptop computers issued by U.S. companies at one of the Defendant's residences for the purposes of deceiving the companies into believing that the IT worker was in the United States. *Id*.

Specifically, on or around July 11, 2019, the Defendant contacted Co-Defendant, Pedro Ernesto Alonso De Los Reyes, ("Co-Defendant Alonso") via Skype and informed him he was creating a new start-up company called Taggcar Incorporated ("Taggcar"). *Id*. The

7

Defendant asked Co-Defendant Alonso to join Taggcar as an iOS developer. *Id*. Co-Defendant Alonso declined, and instead, on June 17, 2020, suggested that his "Chinese friend" based "in China" could help the Defendant. *Id*. During said conversation, Co-Defendant Alonso admitted he had allowed this "friend" to obtain remote IT work using his name. *Id*. The Defendant asked Co-Defendant Alonso to put him in touch with his "friend." *Id*. Approximately two minutes later, Co-defendant Jin Sung-II ("Co-Defendant Jin"), using the alias "Richard Stewart", and the live:richard.stewart.1202 Skype account, contacted the Defendant , using the erick.nt Skype account, noting that "Pedro introduced you to me." *Id*.

In or around May 2021, the Defendant and Co-Defendant Jin agreed to obtain remote IT work from unsuspecting United States companies through Corporation-to-Corporation ("C2C") contracts. *Id*. A C2C contract is an agreement between two (or more) businesses for services, rather than an agreement between a business and an employee (or contractor) for services. *Id*. As part of the scheme, the Defendant agreed to use Taggcar to contract with companies to hire Co-Defendant Jin and other overseas IT workers for remote IT work that Co-Defendant Jim and the other overseas IT workers would ultimately complete in exchange for 20% commission paid to the Defendant. *Id*. Over the course of the conspiracy, Co-Defendant Jin introduced at least two other overseas IT workers into the scheme, including Co-Defendant Pak Jin-Song ("Co-Defendant Pak"). *Id*.

As part of the scheme and to conceal the true identities and location of Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, the Defendant knowingly provided false employment certifications that contained false and stolen identity information to employers to obtain IT work for Co-Defendant Jin, Co-Defendant Pak, and the overseas co-conspirators under these false and stolen identities. *Id*. at 4.

As part of the scheme, the Defendant also received laptops that were sent via U.S. mail or private and/or commercial interstate carriers to their respective residences by the U.S. companies that had hired Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, while they were using false or stolen identities. *Id.*

The Defendant then enabled Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, to mask their location and to perform their work through interstate and overseas wire communications by logging into those devices and installing remote desktop software without authorization. *Id.* The Defendant also shipped the laptops back to the victim companies via U.S. mail or private and commercial interstate carriers when victim companies terminated the employment of the overseas IT workers, including for failure to complete their work or suspicious activity. *Id.*

During the course of the scheme, the Defendant's North Korean co-conspirators obtained remote IT work positions using false and stolen identities from at least 64 different U.S. companies, as described above. *Id.* The co-conspirators received via interstate and overseas wire transfers payment of approximately $943,069.05 for that work, including work performed by the companies identified in the indictment as Company A, Company B, Company C, and Company D. *Id.* For his participation in the scheme, the Defendant received more than $89,000, which was electronically transferred, via interstate and overseas wire, into a bank account he opened in the name of Taggcar. *Id.*

Based on the record in this case, the total value of the proceeds obtained directly or indirectly as the result of conspiracy to commit wire and/or mail fraud, relevant to Count 2 of the Indictment, to which the Defendant pleaded guilty, is $89,000 in U.S. currency, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal

Procedure.

Accordingly, pursuant to 18 U.S.C. § 981(a)(1)(C) and Fed. R. Crim. P. 32.2, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

## LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that I, the undersigned Assistant United States Attorney, have conferred with defense counsel, Christopher DeCoste, Esq., via e-mail on May 5 and 6, 2026, regarding the Defendant's position on the relief sought, and defense counsel has represented that the Defendant opposes the proposed forfeiture in that respect that "Mr. Prince's company filed and paid taxes on this money."

Respectfully submitted,
**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:   *s/ Annika M. Miranda*
Annika M. Miranda
Assistant United States Attorney
Florida Bar No. 64975
99 N.E. 4th Street, 7th Floor
Miami FL, 33132
Telephone: (305) 961-9303
E-mail: Annika.Miranda@usdoj.gov
*Counsel for the United States of America*

10