**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20021-GAYLES**

**UNITED STATES OF AMERICA**

**v.**

**ERICK NTEKEREZE PRINCE,**

      **Defendant.**

## PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon the United States of America's Motion for entry of a Preliminary Order of Forfeiture ("Motion") [Dkt. No. __] against Defendant **ERICK NTEKEREZE PRINCE** (the "Defendant").  The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On or around January 21, 2025, a federal grand jury charged the Defendant in a five-count Indictment. *See* Indictment, Dkt. No. 3. As relevant here, Count 2 of the Indictment charged the Defendant with conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349. *See id*. at 19-20.

The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of Title 18, United States Code, Section 1349, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense pursuant to Title 18, United States Code, Section 981(a)(1)(C). *See id.* at 25.

On November 6, 2025, the Court accepted the Defendant's guilty plea to Count 2 of the Indictment. *See* Minute Entry, Dkt. No. 55; Plea Agreement ¶ 1, Dkt. No. 57. As part of the guilty plea, the Defendant agreed to the forfeiture of a forfeiture money judgment in the amount of

$89,000 in U.S. currency. *See* Plea Agreement ¶ 11, Dkt. No. 57.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, Dkt. No. 56.

Since on or around 2003, the government of the Democratic People's Republic of Korea ("North Korea") has been under sanction by the United Nations ("UN") due to, among other things, its nuclear weapons program. Factual Proffer, Dkt. No. 56, at 1. Since in or around 2016, the United States has had comprehensive trade and economic sanctions against North Korea, effectively cutting North Korea off from the U.S. marketplace and financial system and restricting the ability of U.S. persons and companies from doing business with North Korean institutions. *Id*. at 1. As a result, North Korea has sponsored a variety of schemes to evade these sanctions and earn money for their regime. *Id*.

As part of one such scheme and as relevant here, North Korea has dispatched thousands of highly skilled information technology ("IT") workers to obtain remote, pseudonymous employment with companies around the world. *Id*.  While some of these IT workers operate from cities inside North Korea, many work in the People's Republic of China ("China") in cities near the North Korean border. *Id*. at 1-2.

North Korean IT workers are aided in this fraud by persons residing in the United States. *Id*. at 2. These U.S. facilitators receive, and host laptop computers and other hardware issued by U.S. victim companies at the facilitators' residences in the United States. *Id*. Using login credentials provided to them by the overseas IT workers – and unbeknownst to and without the authorization of the U.S. victim companies – the U.S. facilitators then enable remote access to the laptop computers by the overseas IT workers by downloading remote desktop software *(e.g.,*

AnyDesk) to the computers. *Id*. The North Korean IT workers use the remote desktop software to access U.S.-based computers so that it appears to U.S. victim companies that the overseas IT workers are performing their work from U.S.-based locations. *Id*.  Remote desktop software applications allow a computer to remotely run another computer's desktop environment. *Id*. The remote connection between devices is established and maintained through the Internet. *Id*. In exchange for these and other services, many U.S. facilitators are paid a fee. *Id*. Most of the money generated by this scheme, however, is funneled to the overseas IT workers and their overseas co-conspirators. *Id*.

From on or about June 17, 2020, through in or around August 2024, the Defendant, a U.S. citizen and resident of New York, conspired as a facilitator for at least three North Korean IT workers using the personas "Richard Stewart," "Pedro Alonso," "Stewart Conn," "Wesley Yang," and "Glaus Li," among others, and conspired with them to obtain their employment with U.S. companies, perform work remotely, and share in the proceeds generated by the remote IT work. *Id*.

At all relevant times, the Defendant believed the IT workers, and Richard Stewart in particular, were Chinese nationals residing outside, and not authorized to work in, the United States. *Id*.

In furtherance of the scheme, the North Korean IT workers used the stolen identities of U.S. citizens to apply for and obtain remote IT work at U.S. companies. *Id*. at 3. After the North Korean IT workers obtained remote IT work, the Defendant received and hosted the laptop computers issued by U.S. companies at one of the Defendant's residences for the purposes of deceiving the companies into believing that the IT worker was in the United States. *Id*.

3

Specifically, on or around July 11, 2019, the Defendant contacted Co-Defendant, Pedro Ernesto Alonso De Los Reyes, ("Co-Defendant Alonso") via Skype and informed him he was creating a new start-up company called Taggcar Incorporated ("Taggcar"). *Id*. The Defendant asked Co-Defendant Alonso to join Taggcar as an iOS developer. *Id*. Co-Defendant Alonso declined, and instead, on June 17, 2020, suggested that his "Chinese friend" based "in China" could help the Defendant. *Id*. During said conversation, Co-Defendant Alonso admitted he had allowed this "friend" to obtain remote IT work using his name. *Id*. The Defendant asked Co-Defendant Alonso to put him in touch with his "friend." *Id*. Approximately two minutes later, Co-defendant Jin Sung-II ("Co-Defendant Jin"), using the alias "Richard Stewart", and the live:richard.stewart.1202 Skype account, contacted the Defendant , using the erick.nt Skype account, noting that "Pedro introduced you to me." *Id*.

In or around May 2021, the Defendant and Co-Defendant Jin agreed to obtain remote IT work from unsuspecting United States companies through Corporation-to-Corporation ("C2C") contracts. *Id*. A C2C contract is an agreement between two (or more) businesses for services, rather than an agreement between a business and an employee (or contractor) for services. *Id*. As part of the scheme, the Defendant agreed to use Taggcar to contract with companies to hire Co-Defendant Jin and other overseas IT workers for remote IT work that Co-Defendant Jim and the other overseas IT workers would ultimately complete in exchange for 20% commission paid to the Defendant. *Id*. Over the course of the conspiracy, Co-Defendant Jin introduced at least two other overseas IT workers into the scheme, including Co-Defendant Pak Jin-Song ("Co-Defendant Pak"). *Id*.

As part of the scheme and to conceal the true identities and location of Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, the Defendant knowingly provided

4

false employment certifications that contained false and stolen identity information to employers to obtain IT work for Co-Defendant Jin, Co-Defendant Pak, and the overseas co-conspirators under these false and stolen identities. *Id*. at 4.

As part of the scheme, the Defendant also received laptops that were sent via U.S. mail or private and/or commercial interstate carriers to their respective residences by the U.S. companies that had hired Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, while they were using false or stolen identities. *Id*.

The Defendant then enabled Co-Defendant Jin, Co-Defendant Pak, and other overseas IT workers, to mask their location and to perform their work through interstate and overseas wire communications by logging into those devices and installing remote desktop software without authorization. *Id*. The Defendant also shipped the laptops back to the victim companies via U.S. mail or private and commercial interstate carriers when victim companies terminated the employment of the overseas IT workers, including for failure to complete their work or suspicious activity. *Id*.

During the course of the scheme, the Defendant's North Korean co-conspirators obtained remote IT work positions using false and stolen identities from at least 64 different U.S. companies, as described above. *Id*. The co-conspirators received via interstate and overseas wire transfers payment of approximately $943,069.05 for that work, including work performed by the companies identified in the indictment as Company A, Company B, Company C, and Company D. *Id*.  For his participation in the scheme, the Defendant received more than $89,000, which was electronically transferred, via interstate and overseas wire, into a bank account he opened in the name of Taggcar. *Id*.

Based on the record in this case, the total value of the proceeds obtained directly or

5

indirectly as the result of conspiracy to commit wire and/or mail fraud, relevant to Count 2 of the Indictment, to which the Defendant pleaded guilty, is $89,000 in U.S. currency, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1. Pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $89,000 in U.S. currency is hereby entered against the Defendant.

2. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

 **DONE AND ORDERED** in Chambers at Miami, Florida, this May ____, 2026.

        _____
        **DARRIN P. GAYLES**
        **UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record

6